NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PETER J. FORSMAN**, <br><br> Plaintiff, <br><br> v. <br><br> **OFFICER JESSE DYKSTRA,** *et al.*, <br><br> Defendants. | Civil Action No. 21-8181 (ZNQ) (TJB) <br><br> **OPINION** |

**QURAISHI, District Judge**

      **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants the Borough of Fair Haven, Sergeant Jesse Dykstra, and Chief Joseph McGovern of the Fair Haven Police Department ("the Fair Haven Defendants"). ("Motion", ECF No. 9.) The Fair Haven Defendants filed a Moving Brief in Support of their Motion. ("Moving Br." ECF No. 9-3.) Defendants the Borough of Little Silver, Scott Lorensen, and Daniel Shaffery joined the Fair Haven Defendants' Motion via Notice of Joinder.[1] (ECF No. 12.) Plaintiff Peter Forsman ("Plaintiff") filed an Opposition to Defendants' Motion ("Opp'n", ECF No. 10) to which the Defendants replied ("Reply", ECF No. 11).

      The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.

---

[1] The Fair Haven Defendants along with the Borough of Little Silver, Scott Lorensen, and Daniel Shaffery are collectively referred to as the "Defendants".

1

For the reasons set forth below, the Court will GRANT-IN-PART and DENY-IN-PART Defendants' Motion to Dismiss.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff initiated the instant action on April 5, 2021, by filing his Complaint. ("Compl.", ECF No. 1.) The Complaint alleges that Plaintiff was the victim of false arrest, false imprisonment, and excessive force by Defendants Jesse Dykstra of the Fair Haven Police Department and Scott Lorensen of the Little Silver Police Department, in violation of the Fourth Amendment to the United States Constitution, and New Jersey state tort laws. (*Id.* ¶ 3.)

The Complaint alleges that on May 24, 2019, Plaintiff was a passenger in a vehicle driven by his friend, Chris Meyer ("Meyer"). (*Id.* ¶ 17.) After Meyer made a right turn at the intersection of Harding Road and Rumson Road in Little Silver, New Jersey, which is controlled by a right turn light, he was pulled over by Officer Volker of the Fair Haven Police Department. (*Id.*) "During the stop, Meyer was asked to step out of his vehicle and perform several field sobriety tests. Following those tests, officers arrested Meyer for Driving While Intoxicated ("DWI"), contrary to N.J.S.A. 39:4-50." (*Id.* ¶ 18.) Following Meyer's arrest, Dykstra approached Plaintiff in the passenger seat and advised him that he had to exit Meyer's vehicle and find another way home because the officers were impounding it. (*Id.* ¶ 19.) As Plaintiff opened the passenger side door of the vehicle to exit—as instructed—Dykstra claimed the door struck him in the chest. (*Id.* ¶ 20.) According to Plaintiff, however, he merely cracked his door open before Dykstra slammed it shut on him. (*Id.*) Dykstra then instructed Plaintiff to start walking and leave the scene of Meyer's arrest. (*Id.* ¶ 21.) Instead of immediately walking away, Plaintiff asked Dykstra a question and, in response, Dykstra and Lorensen grabbed Plaintiff's wrist and pulled him closer to the stopped vehicle in order to place him in handcuffs as he was being arrested for simple assault.

(*Id.*)  The Complaint alleges that "[a]lthough the alleged simple assault indisputably occurred in Little Silver, and Lorensen was on scene to assist with Meyer's DWI stop, [Plaintiff] was ultimately arrested by Dykstra and transported to Fair Haven Police Department to be booked and processed." (*Id.* ¶ 22.)

Plaintiff alleges that Dykstra did not have jurisdiction to arrest him for an alleged disorderly persons offense that occurred outside of Fair Haven. (*Id.* ¶ 23.)  Plaintiff had a pre-existing shoulder injury that was exacerbated when Dykstra grabbed his wrist and twisted and wrenched his arm behind his back, using an unnecessary and unsanctioned compliance hold. (*Id.* ¶ 24.)  Dykstra also slammed the police cruiser door shut on Plaintiff's leg. (*Id.*)  Dykstra ignored Plaintiff's pain complaints en route to the police station. (*Id.* ¶ 26.)  Upon arriving at the Fair Haven police station, Plaintiff was "improperly lifted out of the cruiser by his arm, causing additional injuries to [Plaintiff]'s already injured shoulder." (*Id.* ¶ 27.)  "The resultant pain caused [Plaintiff] to reflexively scream out an expletive . . . As a result of that involuntary expletive, [Plaintiff] was also charged with Disorderly Conduct, contrary to N.J.S.A. 2C:33-2a(1)." (*Id.* ¶ 28.)  As Dykstra and Lagrotteria walked Plaintiff in to be processed, Plaintiff explained that he had a torn labrum and that he was in severe pain. (*Id.* ¶ 29.)  Finally, the Fair Haven Police Department called for medical assistance, and Plaintiff was transported to Riverview Medical Center for examination. (*Id.*)

On July 9, 2019, Plaintiff moved before the Superior Court of New Jersey for an Order dismissing the charges against him as *de minimis*. (*Id.* ¶ 30.)  In support of that motion, Plaintiff submitted the Mobile Video Recorder ("MVR") videos provided to him by the Fair Haven Police Department in discovery. (*Id.*)  On July 16, 2019, the Assistant Prosecutor assigned to the matter consented to dismissal after reviewing the charges and evidence against Plaintiff, including the

3

MVR videos. (*Id.* ¶ 31.) On July 19, 2019, the Superior Court of New Jersey granted Plaintiff's motion and dismissed the charges against him. (*Id.* ¶ 32.) On August 22, 2019, following the dismissal of the charges against him, Plaintiff served timely Notices of Claim on both Fair Haven and Little Silver. (*Id.* ¶ 33.) Those Notices of Claim were received and acknowledged by Borough employees on the same date. (*Id.*) Since that time, Plaintiff has been receiving medical treatment for his injuries. (*Id.* ¶ 34.) His torn labrum will likely require surgical intervention and is a permanent injury. (*Id.*) Plaintiff thereafter submitted the nine-count Complaint alleging False Arrest/False Imprisonment (Count I), Unreasonable and Excessive Force (Count II), Intentional Infliction of Emotional Distress (Count III), Malicious Assault and Battery (Count IV), Assault and Battery (Count V), Tortious Interference with Economic Advantage (Count VI), Negligent Training and Supervision (Count VII), New Jersey Civil Rights Violations (Count VIII) and 42 U.S.C. § 1983 Violations (Count IX).

## II.  **JURISDICTION**

The Court has original jurisdiction over this matter under 28 U.S.C. § 1331 based on the Complaint's assertion of a claim under 42 U.S.C. § 1983. The Court has supplemental jurisdiction over the Complaint's other state law claims pursuant to 28 U.S.C. § 1367.

## III.  **LEGAL STANDARD**

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in

a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

IV. **DISCUSSION**

    A.    **COUNTS II, VIII, AND IX**

Defendants argue that Counts VIII (New Jersey Civil Rights Violations) and IX (42 U.S.C. § 1983 Violations) of the Complaint—Plaintiff's constitutional claims—must be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). (Moving Br. at 9.) Specifically, Defendants argue that a "plaintiff generally cannot maintain a § 1983 action unless the 'termination of the prior criminal proceeding [was resolved] in favor of the accused.'" (*Id.* at 12) (quoting *Giles v. Davis*, 427 F.3d 197, 210 (3d Cir. 2005)). In Defendants' view, the dismissal of the charges against Plaintiff in the Superior Court of New Jersey is not indicative of his innocence, nor is it a favorable termination under *Heck*. (*Id.*) Rather, the disposition of the charges against Plaintiff was a dismissal under N.J.S.A. 2C:2-11, the *de minimus* statute. (*Id.* at 16.) Defendants submit "that the disposition under the *de minimus* statute was not such a disposition as to indicate that Plaintiff was not guilty of the offenses charged and was, therefore, not a 'favorable termination.'" (*Id.*) Accordingly, Defendants contend that the § 1983 and NJCRA claims are barred and must be dismissed. (*Id.*)

    New Jersey's *de minimis* statute, N.J.S.A. 2C:2-11, provides:

> The assignment judge may dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the defendant's conduct:
>
> a. Was within a customary license or tolerance, neither expressly negated by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

6

>    b. Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
>
>    c. Presents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense.  The assignment judge shall not dismiss a prosecution under this section without giving the prosecutor notice and an opportunity to be heard.  The prosecutor shall have a right to appeal any such dismissal.

"The *de minimis* statute vests the assignment judge with discretion to dismiss certain charges to avoid an absurd application of the penal laws." *State v. Evans*, 340 N.J. Super. 244, 248 (App. Div. 2001).  Relevant to Plaintiff's case is subsection (b) of the statute, which "permits dismissal where the conduct charged: (1) [d]id not actually cause or threaten the harm sought to be prevented' or (2) was 'too trivial to warrant the condemnation of conviction." *Id*. at 249 (internal citation omitted).

Thus, the analysis is two-fold under N.J.S.A. 2C:2-11(b).  First, the court must determine whether the conduct charged caused or threatened the harm sought to be prevented by the Legislature.  If the conduct charged did not cause or threaten the harm sought to be prevented, then no crime was committed, and the charges must be dismissed.  If the conduct charged did in fact cause or threaten the harm sought to be prevented, it then moves on to the triviality prong of subsection (b).  In that regard, "when considering whether an infraction is *de minimis* due to triviality, the judge must assume 'that the conduct charged actually occurred.'" *Id*. at 250 (quoting *State v. Cabana*, 315 N.J. Super. 84 (Law Div. 1997), *aff'd*, 318 N.J. Super. 259 (App. Div. 1999)).

Here, in dismissing Plaintiff's charges as *de minimis* under N.J.S.A. 2C:2-11(b), the Superior Court of New Jersey stated

> The accidental and incidental contact with the officer by opening an automobile door when exiting a vehicle is not the harm or evil sought to be prevented by the Legislature under N.J.S.A. 2C:12-1. . . . . Also, involuntarily saying a single [expletive] out of pain when

7

> an individual has his shoulder put back into socket . . . is not the harm or evil sought to be prevented by the Legislature under N.J.S.A. 2C:33-2(b) since . . . an involuntary single [expletive] said out of pain does not have the purpose to offend[.]

(Opp'n at 9; Pl. Ex. F, "Order", at 2–3.)  The Superior Court did not need to reach the triviality prong of N.J.S.A. 2C:2-11(b), because as to both charges against Plaintiff, the court found no crime had been committed.  Although Defendants present these same facts—namely, the Superior Court's Order dismissing Plaintiff's charges as *de minimis*—they argue that this dismissal is not favorable and instead is analogous to a dismissal through Pre-Trial Intervention Program ("PTI"). (Moving Br. at 12–13.)  While Defendants are correct in stating that courts have consistently held that dismissal through PTI is not a "favorable termination", that is not the case here, where "a plaintiff stating a claim for false arrest is not prosecuted or convicted for any charge." *Menke v. Baker*, Civ. No. 10-2585, 2012 WL 2339825, at *8 (D.N.J. June 19, 2012) (holding that *Heck* is not intended to bar suits from plaintiffs that were neither prosecuted nor convicted of any charge.).  "*Heck* is concerned with judgments in civil proceedings that would necessarily imply the invalidity of a criminal conviction." *Id.*  Here, Plaintiff was never convicted and nothing in the record indicates that he pled guilty to any offense.  Accordingly, the Court finds that Plaintiff's claims should not be dismissed pursuant to *Heck v. Humphrey*. *Id.*

To be clear, the Court finds that denying the Motion to Dismiss is not inconsistent with the state court's *de minimis* dismissal.  The rationale for *Heck* and its progeny is indeed, as Defendants, point out "to avoid the possibility of criminal and civil proceedings that produce[] inconsistent adjudications as to the same issues."  The Court disagrees with Defendants' attempt to invoke it here under the theory that "[p]ermitting Plaintiff's case to proceed would effectively negate the prior state court proceeding, in which Plaintiff conceded that the charged conduct occurred, and would also negate finality and consistency." (Moving Br. at 18.)

8

In Plaintiff's *de minimis* motion, the state court never reached the "triviality" prong of N.J.S.A. 2C:2-11(b), and therefore it did not have to assume that the charged conduct occurred. (Order at 2.) Even assuming *arguendo* that the court did reach that prong, it was assumed, only for purposes of the motion, that the charged conduct actually occurred. The court was then left to resolve one issue: whether Plaintiff's conduct constituted the "evil or harm" envisioned by the Legislature when it enacted the criminal statutes at issue. The court and the assigned prosecutor agreed that Plaintiff's conduct did not constitute a crime. In short, that court concluded that *no crime occurred*. On this basis, this Court finds that Defendants have not met their burden as the moving party to establish that *Heck* should bar Plaintiff's claim in this suit. Accordingly, Defendants' Motion to Dismiss Counts VIII, and IX of the Complaint will be denied.

### B. COUNT I

Count I of the Complaint alleges false arrest/false imprisonment claims against the defendants. (Compl. ¶ 35.) Defendants argue that Count I of the Complaint should be dismissed for failure to state a claim and pursuant to judicial estoppel. (Moving Br. at 25–26.) Specifically, Defendants argue that judicial estoppel precludes Plaintiff from asserting his claim because Plaintiff is asserting a position inconsistent with the one he took while in the Superior Court of New Jersey wherein he moved for an Order dismissing the charges against him under the *de minimus* statute, requesting that the Court assume that the charges against Plaintiff were true. (*Id.* at 27.) Defendant further asserts that even if judicial estoppel does not apply, Plaintiff's claim fails because Defendants had probable cause for Plaintiff's arrest, a dispositive element of a false arrest/false imprisonment claim. (*Id.* at 28.) As the Court has already noted above, however, the Superior Court never reached the triviality prong of the *de minimis* statute and therefore never needed to assume that the conduct charged actually occurred.

To state a claim for false imprisonment, a plaintiff must establish: (1) that he was detained; and (2) that the detention was unlawful. *James v. City of Wilkes-Barre*, 700 F.3d 675, 682 (3d Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 389 (2007)). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Conversely, "[f]alse arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)).

Plaintiff argues that the Superior Court's dismissal of his charges as *de minimis* inherently means that there was insufficient probable cause for his arrest. (Opp'n at 20.) Courts in this circuit, however, are abundantly clear in holding that an order dismissing charges as *de minimis* from the New Jersey Superior Court should not be a dispositive factor with respect to probable cause at the motion to dismiss stage of a subsequent civil suit. *See, e.g.*, *Lane v. New Jersey*, Civ. No. 22-4239, 2022 WL 17829431, at *7 (finding that the "plaintiff fail[ed] to plausibly allege a lack of probable cause" for his false arrest claim despite the Superior Court's dismissal of the plaintiff's charges as *de minimis*.) "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). In determining whether probable cause existed at the time of the arrest, the "arresting officer's state of mind" and the charges "actually invoked by the arresting officer" are irrelevant. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Courts must instead objectively assess whether, at the time of the arrest and based on the facts known to the officer, probable cause existed "as to any offense that could be

10

charged under the circumstances." *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed." *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992).

As pled in the Complaint, Plaintiff's arrest and underlying charge were for a simple assault after Plaintiff opened his passenger-side door to leave the scene as instructed by Officer Dykstra. (Compl. ¶ 36.) After Plaintiff exited the vehicle, Officer Dykstra repeated his order to Plaintiff instructing him to leave the scene at which point Plaintiff asked a question which promptly led to his arrest. (*Id.* ¶ 21.) Accepting Plaintiff's version of events, as the Court must on a motion to dismiss by the defendants, Defendants lacked probable cause to arrest Plaintiff. Plaintiff was arrested for simple assault pursuant to N.J.S.A. 2C:12-1a(1), which provides in relevant part that "[a] person is guilty of assault if he attempts to cause or purposely, knowingly or recklessly causes bodily injury to another." Plaintiff has plausibly pled that he did not attempt to cause, or purposely, knowingly or recklessly cause, bodily injury to Officer Dykstra. Accordingly, Defendants' Motion to Dismiss Count I of the Complaint will be denied.

### C.   COUNT III

Count III of the Complaint alleges intentional infliction of emotional distress. Specifically, Plaintiff alleges that Defendants "knew or should have known that their false arrest and use of excessive force against Plaintiff would cause Plaintiff to suffer severe emotional distress." (Compl. ¶ 52.) Plaintiff further alleges that Defendants' conduct in arresting and charging Plaintiff in the absence of probable cause and exerting excessive force, was extreme and outrageous under the circumstances and cause Plaintiff to suffer severe emotional distress and damages. (*Id.* ¶¶ 53–54.) Defendants, on the other hand, argue that Count III of the Complaint should be dismissed

11

because "neither the facts alleged by Plaintiff with respect to the incident itself, nor the facts claimed with respect to the alleged injury itself, meet the high threshold necessary to sustain a claim for [intentional infliction of emotional distress]." (Moving Br. at 31.)

"Intentional infliction of emotional distress consists of 'extreme and outrageous conduct [which] intentionally or recklessly causes severe emotional distress to another.'" *Lingar v. Live-In Companions, Inc.*, 300 N.J. Super. 22, 34 (App. Div. 1997) (citing *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988)) (quoting Restatement (Second) of Torts § 46 (1965)). A plaintiff must allege the following elements to state a claim for intentional infliction of emotional distress: (1) conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community," (2) a deliberate act, committed with the intent to cause emotional distress or with deliberate disregard of a high probability that emotional distress would occur, (3) proximately causing emotional distress that is "so severe that no reasonable man could be expected to endure it." *Buckley*, 111 N.J. at 366 (quoting Restatement (Second) of Torts § 46, comments d and j (1965)); *see also Green v. City of Paterson*, 971 F. Supp. 891, 911 (D.N.J. 1997). For conduct to be "extreme and outrageous," New Jersey courts require that the conduct have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ingraham v. Ortho-McNeil Pharm.*, 422 N.J. Super. 12, 21 (App. Div. 2011). Courts refer to it as an "elevated threshold" which is "satisfied only in extreme cases." *Id.* (quoting *Griffin v. Tops Appliance City, Inc.*, 337 N.J. Super. 15, 23 (App. Div. 2001)). It is the responsibility of the court to determine as a matter of law whether the required level of distress could reasonably be found. *See Buckley*, 111 N.J. at 367; *Fleming v. United Parcel Serv., Inc.*, 255 N.J. Super. 108, 167 (Law Div. 1992).

Here, Plaintiff has failed to allege conduct on the part of Defendants that would support a cause of action for intentional infliction of emotional distress. First, under N.J.S.A.59:2-10, a public entity cannot be held liable for the willful misconduct of its employees. N.J.S.A. 59:2-10 states: "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." *McGovern v. City of Jersey City*, Civ. No. 98-5186, 2006 WL 42236, *15 (D.N.J. Jan. 6, 2006). Second, according to the Complaint, Defendants detained Plaintiff allegedly without probable cause and refused to uncuff Plaintiff after he complained of pain. (Compl. ¶¶ 21, 26–28.) These actions, however, do not satisfy the "elevated threshold" required to establish an intentional infliction of emotional distress claim. *Ingraham*, 422 N.J. Super. at 21. "The plaintiff does not contend that he was beaten, held under unbearable conditions, or otherwise severely mistreated in any manner during this period." *Ramirez v. United States*, 998 F. Supp. 425, 434 (D.N.J. 1998) (dismissing intentional infliction of emotional distress claim because the plaintiff did not allege he was severely mistreated during the arrest). Although the reasonableness of the arrest will not be evaluated at this juncture, as a matter of law, the Court finds that, as alleged, the arrest does not rise to the level of outrageous and extreme conduct committed with an intent to produce severe emotional distress. *Id.* Moreover, Plaintiff "does not allege any specific traumatic symptoms that he incurred as a result of this detention." *Compare id. and Lankford v. City of Clifton Police Dep't*, 546 F. Supp. 3d 296, 324 (D.N.J. 2021) (finding that the plaintiff had sufficiently alleged intentional infliction of emotional distress where the arresting officer "used various racial slurs, including the n—word" but not when "he used his baton to strike [the plaintiff]'s leg three times."). Accordingly, the Court will dismiss Count III without prejudice.

D.     COUNTS IV AND V

Counts IV and V of the Complaint allege malicious assault and battery, and assault and battery respectively wherein he asserts almost the exact same allegations.  Plaintiff alleges that Defendants "maliciously and intentionally assaulted and battered Plaintiff by slamming him into a parked vehicle, and twisting and wrenching his arms behind his back using an unsanctioned compliance hold." (Compl. ¶¶ 60, 67.) "Said conduct on the part of Defendants was made without instructing Plaintiff to put his hands behind his back, without Plaintiff's consent, and constituted an invasion of the plaintiff's person and dignity." (*Id.* ¶¶ 61, 68.)  As a direct and proximate result of the assault and battery committed upon Plaintiff by the Defendants in violation N.J.S.A. 2C:3-7, Plaintiff suffered severe and permanent injuries. (*Id.* ¶¶ 62–64, 69–71.)  Defendants argue that Counts IV and V of the Complaint must be dismissed because a police officer making an arrest will not be guilty of either assault or battery for doing so, especially in light of Plaintiff's admittance of the charged conduct.  (Moving Br. at 32.)

Both assault and battery are intentional torts.  *Corradetti v. Sanitary Landfill, Inc.*, 912 F. Supp. 2d 156, 161 (D.N.J. 2012).  "Common-law battery is an intentional tort involving the harmful or offensive touching of plaintiff's person without his consent." *Caldwell v. KFC Corp.*, 958 F. Supp. 962, 970 (D.N.J. 1997).  Common law assault occurs when a defendant "intends only to cause apprehension" that battery is imminent. *Kelly v. County of Monmouth*, 380 N.J. Super. 552, 559 (App. Div. 2005).  Though Plaintiff asserts Counts IV and V against all Defendants, and adds allegations that Defendants McGovern, Shaffery, Borough of Fair Haven and Borough of Little Silver had a "policy and/or custom . . . to condone the actions of their agents, servants and/or employees by virtue of their training, supervision, policies, procedures and/or directives," these allegations do not plead a plausible tort claim. *See Doss v. Osty*, Civ. No. 10-3497, 2011 WL

2559558, at *7 (D.N.J. June 27, 2011) (holding that the plaintiff failed to state a claim against municipal defendants when only one individual was alleged to have committed the "harmful or offensive contact."). Assault and battery are intentional torts, and Plaintiff only alleges intent regarding the assault and battery as to Defendants Dykstra and Lorensen. *See id.* Additionally, Defendants Dykstra and Lorensen are the only ones alleged to have committed a "harmful or offensive contact." *See id.* As such, Counts IV and V fail to state a claim of common law assault and battery as to Defendants McGovern, Borough of Fair Haven, Daniel Shaffery, Borough of Little Silver, and John Does 1-10. Counts IV and V will be dismissed without prejudice as against these defendants.

On the other hand, the Court finds that the facts as pled in the Complaint—namely, the use of "an unsanctioned compliance hold"—sufficiently state a claim of assault and battery as against Defendants Dykstra and Lorensen. *See Jones v. City of Vineland*, Civ. No. 13-7132, 2016 WL 1305251, at *12 (denying motion to dismiss assault and battery claim against defendant police officer after he "tackled [the p]laintiff to the ground and placed [the p]laintiff in a compliance hold" during the arrest.). These claims will be permitted to proceed.

### E. COUNT VI

Count VI of the Complaint alleges tortious interference with economic advantage. Specifically, Plaintiff alleges that he was employed as a sales executive at Commvault and his "employment is a protected interest recognized by the courts of the State of New Jersey and the federal courts of the United States." (Compl. ¶ 73.) Plaintiff further alleges that Defendants "intentionally interfered with that protected interest by falsely arresting and imprisoning Plaintiff in the absence of probable cause." (*Id.* ¶ 74.) Defendants knew or should have known that the false arrest and its publication in local police blotters, would tarnish Plaintiff's reputation among

15

his peers and colleagues, thereby causing Plaintiff to lose wages and subsequently suffer economic damages. (*Id.* ¶¶ 75–76.)  Defendants argue that Count VI of the Complaint should be dismissed because it is "purely conclusory, without factual basis." (Moving Br. at 34.)  Moreover, the Complaint does not allege that Plaintiff was either in a prospective contractual relationship nor in pursuit of business, which are necessary elements to successfully plead a tortious interference with economic advantage claim. (*Id.* at 33–34.)

A prima facie case of tortious interference with prospective economic advantage requires (1) a continuing or prospective economic advantage, (2) that defendant knew of such advantage, (3) that defendant interfered with that advantage "with malice," i.e., in a manner "transgressive of generally accepted standards of common morality," and (4) that as a result of the interference, the plaintiff suffered injury. *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 757 (1989).  Causation is satisfied if, had there been no interference, "there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits." *Id.* at 759 (citation omitted); *see also Fineman v. Armstrong World Indus.*, 980 F.2d 171, 186 (3d Cir. 1992).

While Plaintiff accuses Defendants of tortiously interfering with his prospective economic advantage, he has provided no factual allegations to support his bare, conclusory claim of a reasonable expectation of economic advantage arising from a contract. *See Ricketti v. Barry*, Civ. No. 13-6804, 2015 WL 1013547, at *5 (D.N.J. Mar. 9, 2015) (granting motion to dismiss tortious interference with economic advantage claim because the plaintiff "provided no factual allegations to support his bare, conclusory claim of a reasonable expectation of economic advantage arising from a contract.").  Plaintiff also fails to allege what business/clients Defendants prevented him from obtaining and what business he was pursuing. *See Printing Mart-Morristown v. Sharp*

16

*Electronics Corp.,* 116 N.J. 739, 751 (1989) ("there must be allegations of fact giving rise to some reasonable expectation of economic advantage . . . A complaint must demonstrate that a plaintiff was in pursuit of business.") (internal quotation marks and citation omitted).  As currently pled, there is no indication that the business Defendants purportedly interrupted provided any economic commitment to Plaintiff.  *See Med-Metrix, LLC v. Boyce*, Civ. No. 17-3400, 2017 WL 5162809, at *3 (D.N.J. Nov. 7, 2017) (dismissing tortious interference claim because the complaint "fail[ed] to plead specific facts which make plausible the inference that that [the plaintiff] had a reasonable expectation of economic advantage").  Accordingly, Count VI of the Complaint will be dismissed without prejudice.

### F.    COUNT VII

Count VII alleges negligent training and supervision against the defendants.  Namely, Plaintiff alleges that Defendants McGovern, Shaffery, Borough of Fair Haven, Borough of Little Silver, and John Does 1-10, have failed to follow proper and lawful policies, procedures and/or guidelines for the use of force by allowing Dykstra and Lorensen to continue to remain as officers in the Boroughs of Fair Haven and Little Silver without charges being brought against them, or an internal affairs investigation being conducted based upon Dykstra's and Lorensen's unlawful conduct.  (Compl. ¶ 80.)  As a direct and proximate result of Defendants' negligent training and/or supervision of Dykstra, Lorensen, and John Does 1-10, Plaintiff suffered severe damages.  (*Id.* ¶ 82.)  Defendants argue that Count VII must be dismissed because Plaintiff once again makes a conclusory claim devoid of any supporting facts or allegations.  (Moving Br. at 34.)  Moreover, "Plaintiff had no cognizable individual right to have an internal affairs or other administrative investigation or charges."  (*Id.* at 35.)

"The torts of negligent training and supervision require the plaintiff to show the four elements of negligence." *Gardner v. N.J. State Police*, Civ. No. 15-8982, 2016 WL 6138240, at *4 (D.N.J. Oct. 21, 2016) (citing *Dixon v. CEC Entm't, Inc.*, Civ. No. 10-06T1, 2008 WL 2986422, at *19 (N.J. Super. Ct. App. Div. Aug. 6, 2008)). Namely, to prevail on a negligent training claim, a plaintiff must demonstrate that "(1) the defendant owed a duty of care to the plaintiff to properly train its employees, (2) defendant breached that duty of care, (3) defendants breach was the proximate cause of plaintiff's injury, and (4) defendant's breach caused actual damages to plaintiff." *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 768 (D.N.J. 2016) (quoting *Brijall v. Harrah's Atl. City*, 905 F. Supp. 2d 617, 621 (D.N.J. 2012)).

Here, Plaintiff's negligent training and supervision claims against Defendants fail on the elements of duty and breach. The Complaint alleges that McGovern, Shaffery, Borough of Fair Haven, Borough of Little Silver, and John Does 1-10 failed to adequately train and supervise their officers in handling the encounter with Plaintiff, but presents no facts to support that assertion. *See Gardner*, 2016 WL 6138240, at *4 (dismissing negligent training and supervision claim because the plaintiff furnished no facts to support the assertion that the arresting officers were negligently trained/supervised.). In addition, the Complaint neglects to plead that Defendants owed Plaintiff a duty of care and breached that duty. *See Panarello*, 160 F. Supp. 3d at 768 (dismissing negligent training and supervision claim because the plaintiff's "allegations . . . fail to establish that [the defendant] owed a duty of care to [the p]laintiff, breached that duty, the breach was the proximate cause of injury to [the plaintiff]."). The pleading standard requires more than mere conclusory statements, and Plaintiff failed to plead anything more than conclusory statements here. *Id.* As such, Count VII of the Complaint will be dismissed without prejudice.

## V.  **CONCLUSION**

For the reasons stated above, the Court will GRANT-IN-PART and DENY-IN-PART Defendants' Motion to Dismiss as follows:  the Motion to Dismiss is GRANTED without prejudice with respect to Plaintiff's Intentional Infliction of Emotional Distress claim (Count III), Tortious Interference with Economic Advantage claim (Count VI) , Negligent Training and Supervision claim (Count VII), and Malicious Assault and Battery (Count IV) and Assault and Battery (Count V) claims as against Defendants McGovern, Borough of Fair Haven, Daniel Shaffery, Borough of Little Silver, and John Does 1-10.  The Motion to Dismiss is DENIED with respect to Plaintiff's False Arrest/False Imprisonment claim (Count I), Unreasonable Excessive Force claim (Count II), New Jersey Civil Rights Violations claim (Count VIII), 42 U.S.C. § 1983 Violations claim (Count IX), and Malicious Assault and Battery (Count IV) and Assault and Battery (Count V) claims as against Defendants Dykstra and Lorensen.  Plaintiff will be given leave to file an Amended Complaint within 30 days.  An appropriate Order will follow.

Date: **April 28, 2023**

                                              s/ Zahid N. Quraishi  
                                              **ZAHID N. QURAISHI**  
                                              **UNITED STATES DISTRICT JUDGE**